IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARY L. YEARWOOD, ET AL.,   *

    PLAINTIFFS   *

    v.   *      CIVIL ACTION NO.: RDB-12-1374

JOHNSON & JOHNSON, INC., ET AL.,   *

    DEFENDANTS.   *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiffs Mary and James Yearwood ("Plaintiffs") bring this action for damages against Defendants Johnson & Johnson, Inc. ("Johnson & Johnson"), a New Jersey corporation, DePuy Orthopaedics, Inc. ("DePuy"), an Indiana corporation, and Chesapeake Surgical, Ltd. ("Chesapeake"), a Maryland corporation. The Plaintiffs, Mary Yearwood and her husband, James Yearwood, allege injuries which result from a defective hip implant, specifically in connection with the DePuy Pinnacle Acetabular Cup System ("Pinnacle") and the alleged deficient development, design, testing, manufacture, distribution, and sale of the DePuy Pinnacle Acetabular Cup System. On June 20, 2012, this Court held a hearing with respect to Plaintiffs' Motion to Stop Transfer to MDL[1] Pending Filing and Hearing of

---

[1] Pursuant to action of the Judicial Panel on Multidistrict Litigation, other Pinnacle hip implant products liability litigation has been transferred to the United States District Court for the Northern District of Texas in MDL 2244. The job of the Judicial Panel on Multidistrict Litigation is to "(1) determine whether civil actions pending in different federal districts involve one or more common questions of fact such that the actions should be transferred to one federal district for coordinated or consolidated pretrial proceedings; and (2) select the judge or judges and court assigned to conduct such proceedings." http://www.jpml.uscourts.gov/panel-info/overview-panel. The Judicial Panel on Multidistrict Litigation established MDL 2244 to coordinate all federal cases sharing "factual questions as to whether DePuy's Pinnacle Acetabular Cup System, a device used in hip replacement surgery, was defectively designed and/or manufactured, and whether defendants failed to provide adequate warnings concerning the device.

1

Motion to Remand (ECF No. 6), Defendants' Motion to Stay Pending Transfer to MDL (ECF No. 7), and Plaintiffs' Motion to Remand (ECF No. 8). During the hearing, this Court denied as moot Plaintiffs' Motion to Stop Transfer to MDL Pending Filing and Hearing of Motion to Remand (ECF No. 6), granted the Defendants' Motion to Stay Pending Transfer to MDL (ECF No. 7), and, therefore, deferred consideration of the Plaintiffs' Motion to Remand (ECF No. 8), which remains pending. This Memorandum Opinion sets forth the reasoning for those rulings, in addition to those reasons previously indicated on the record at the hearing.

## BACKGROUND

Plaintiffs, residents of Maryland, brought suit for injuries sustained as a result and in connection with a hip replacement and implantation of the DePuy Pinnacle Acetabular Cup System. They initially filed their complaint in the Circuit Court for Baltimore City, Maryland. Plaintiffs allege that Johnson & Johnson and DePuy, at all times relevant to this action, engaged in business in the State of Maryland and either directly or through their actual and/or apparent agents, designed, manufactured, labeled, distributed, and/or sold the product at issue in this matter and instructed physicians regarding the advantages and the proper method of implanting this product. Johnson & Johnson is a corporation organized under the laws of New Jersey, with its primary place of business in New Jersey, and as such is a corporate citizen of New Jersey. Johnson & Johnson is the parent company of DePuy. DePuy is a corporation organized under the laws of Indiana, with its primary place of

---

Centralization under Section 1407 will eliminate duplicative discovery, prevent inconsistent pretrial rulings on discovery and other issues, and conserve the resources of the parties, their counsel and the judiciary." *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prods. Liab. Litig.*, 787 F. Supp. 2d 1358, 1360 (J.P.M.L. 2011).

2

business in Indiana, and as such is a corporate citizen of Indiana. Plaintiffs also allege that Chesapeake, at all times relevant to this action, served as a distributor, advertiser, and seller of the product at issue in this matter, for Defendants DePuy and Johnson & Johnson. In addition, Plaintiffs allege that Chesapeake, in its role as distributor, employed sales representatives who were responsible for educating orthopedic surgeons regarding claimed advantages of the product, answering surgeons' questions regarding the product, and assisting surgeons during operations. Chesapeake is a corporation organized under the laws of Maryland, with its primary place of business in Maryland, and as such is a corporate citizen of Maryland.

On May 4, 2012, Defendants removed the case to this Court pursuant to 28 U.S.C. § 1441(b) claiming that this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332. Defendants contend that this Court has jurisdiction despite the fact that complete diversity does not exist insofar as Plaintiffs and Chesapeake are Maryland citizens. Moreover, Defendants justify removal by alleging that the non-diverse defendant, Chesapeake, had been fraudulently joined.[2] Defendants assert that Plaintiffs have no possibility of success against Chesapeake because (1) all of Plaintiffs' failure-to-warn-based claims against Chesapeake are preempted, (2) their strict liability, breach of warranty and negligence claims against Chesapeake are categorically barred under Maryland law, and (3) they do not offer any factual basis for their negligence, fraud, consumer fraud, or warranty-based claims against the distributor. ECF No. 1, Defs'. Notice of Removal at 3.

---

[2] As this Court has previously noted, "[f]raudulent joinder applies when a defendant seeking removal argues that, either the complaint pled fraudulent facts, or, other defendants were joined where there is no possibility of success against those defendants." *Stephens v. Kaiser Foundation Health Plan*, 807 F. Supp. 2d 375, 379 (D. Md. 2011).

3

Having removed the case to this Court, Defendants filed a motion with the Judicial Panel on Multidistrict Litigation to transfer the case to the United States District Court for the Northern District of Texas to be consolidated with other Pinnacle hip implant products liability litigation in MDL 2244.[3] Plaintiffs filed a Motion to Stop Transfer to MDL pending filing and hearing of Motion to Remand (ECF No. 6). Defendants then brought a Motion to Stay pending transfer to MDL 2244 (ECF No. 7). Subsequently, Plaintiffs filed the Motion to Remand to the Circuit Court for Baltimore City, Maryland (ECF No. 8), arguing that Chesapeake is not fraudulently joined because there is a possibility that Plaintiffs could recover on state law claims in state court. At the time of this hearing, this case has been conditionally transferred to MDL 2244. ECF No. 16-3, Conditional Transfer Order.

## MDL 2244

According to the complaint, this case is brought "in connection with the development, design, testing, manufacture, distribution, and sale of the DePuy Pinnacle Acetabular Cup System." ECF No. 2, Compl. at 2. The Judicial Panel on Multidistrict Litigation has consolidated, in the United States District Court for the Northern District of Texas, actions relating to "whether DePuy's Pinnacle Acetabular Cup System, a device used in hip replacement surgery, was defectively designed and/or manufactured, and whether defendants failed to provide adequate warnings concerning the device." *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Products Liab. Litig.*, 787 F. Supp. 2d 1358, 1360 (J.P.M.L.

---

[3] As of May 12, 2012, there were 1,193 actions pending in MDL 2244. MDL STATISTICS REPORT (May 12, 2012), http://www.jpml.uscourts.gov/sites/jpml/files/Pending%20MDL%20Dockets_By%20District_May-2012.pdf.

4

2011). Considering the conditional transfer, this case is within the scope of MDL 2244, currently pending before Judge James E. Kinkeade in the Northern District of Texas.

Over 200 cases have been transferred to the MDL proceeding.[4] ECF No. 7-1, Def. Mem. in support of Mot. to Stay at 1. On May 7, 2012, the Northern District of Texas Court in MDL 2244 issued a Case Management Order governing "the production of documents potentially relevant to allegations and defenses and/or that may lead to the discovery of admissible evidence, in actions currently pending in MDL No. 2244, all future actions transferred to MDL 2244, and all future actions directly filed in MDL No. 2244." MDL No. 3:11-md-02244-K, Docket Entry No. 133, Case Mgmt. Order at 1. The court in MDL 2244 will also be considering motions to remand similar to the motion before this court. *See, e.g., Robinson v. DePuy Orthopaedics, Inc.*, 2012 WL 831650 (W.D. Va. March 6, 2012); *Davis v. DePuy Orthopaedics, Inc.*, 2011 WL 5237563, at *2 (D.N.J. Nov. 2, 2011) (noting that MDL 2244 has already considered motions to remand addressing fraudulent joinder).

### STANDARD OF REVIEW

The United States Supreme Court has long held that the "power to stay proceedings is incidental to the power inherent in every court" to control its own docket "with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 245-55 (1936); *see also Williford v. Armstrong World Indus. Inc.*, 715 F.2d 124, 127 (4th Cir. 1983) (holding that courts possess the inherent power to stay an action to ensure the "efficient management of their dockets"). As previously noted by this Court, the Judicial Panel on Multidistrict Litigation has held that a district court judge can "either wait for a

---

[4] Counsel at hearing was imprecise as to how many cases had been transferred to the MDL proceeding. As previously noted, over 1000 cases are pending in MDL 2244. *See supra* note 3.

5

transfer order without ruling on a motion to remand, or to rule on the motion before a transfer order has been issued." *Moore v. Wyeth-Ayerst Laboratories*, 236 F. Supp. 2d 509, 511 (D. Md. 2002) (citing *In re Asbestos Prods. Liab. Litig.*, 170 F. Supp. 2d 1348, 1349 n. 1 (J.P.M.L. 2001)). In addition, a conditional transfer order before the MDL Panel does not affect the ability of a district court to rule in a case. *See* Rule 2.1(d) of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation.[5]

When determining whether to grant a motion to stay, a district court must "weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 255; *Robinson v. DePuy Orthopaedics, Inc.*, 2012 WL 831650, at *2 (W.D. Va. Mar. 6, 2012). In determining whether to stay proceedings, the district court should consider three factors: (1) the potential prejudice to the non-moving party; (2) the hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation if the cases are in fact consolidated. *See, e.g.*, *Brandt v. BP P.L.C.*, 2010 WL 2802495, at *1 (D.S.C. July 14, 2010)

## ANALYSIS

This Court follows the lead of the majority of districts that have already considered motions to remand in the group of cases that potentially fall under the jurisdiction of MDL 2244. For the following reasons the proceedings in this case have been stayed pending transfer to MDL 2244.

---

[5] Rule 2.1 (d) states: "The pendency of a motion, order to show cause, conditional transfer order or conditional remand order before the Panel pursuant to 28 U.S.C. § 1407 does not affect or suspend orders and pretrial proceedings in any pending federal district court action and does not limit the pretrial jurisdiction of that court. An order to transfer or remand pursuant to 28 U.S.C. § 1407 shall be effective only upon its filing with the clerk of the transferee district court."

6

This Court considers the three factors necessary for determining whether to stay proceedings, specifically, potential prejudice to the non-moving party, hardship to the moving party, and conservation of judicial resources. First, this Court finds that the Plaintiffs in this case will not face substantial prejudice if a stay is granted. Judge Kinkeade of the United States District Court for the Northern District of Texas has already begun to set briefing schedules for remand motions pending under MDL 2244. *See Sanchez v. DePuy Orthopaedics Inc.*, 2011 WL 7092289, at *2 (C.D. Cal. Nov. 21, 2011). In addition, this Court does not find a likelihood of any substantial delay in the MDL proceedings, nor does it find that any delay that might result from a stay would be prejudicial. *See Brewer v. DePuy Orthopaedics, Inc.*, 2012 WL 1595083, at *2 (N.D. Cal. May 4, 2012) ("[T]here is no evidence that the JPML is delaying resolution of whether this case should be transferred to the MDL court, nor is there evidence that the pending MDL related to the Pinnacle product is proceeding slowly."). As this case has been Conditionally Transferred to MDL 2244, a decision will be made regarding the transfer shortly. Should the MDL Panel decide to transfer this case to MDL 2244, Plaintiffs will have the opportunity to argue remand in that proceeding as the transferee judge will decide it together with similar motions to remand. On the other hand, should the MDL Panel decide not to transfer this case then this Court will address all open issues, again causing little delay to the Plaintiffs.

Second, the possibility of a slight delay for the Plaintiffs is far outweighed by the possible prejudice faced by the Defendants if this case is not stayed pending transfer to MDL 2244. If this Court denies the stay, it would "potentially subject Defendant[s] to the significant burden of duplicative litigation." *Freisthler v. DePuy Orthopaedics, Inc.*, 2011 WL

7

4469532, at *2 (C.D. Cal. Sept. 21, 2011). Defendants would be prejudiced by "additional discovery or motion practice" that could "create duplicative and potentially inconsistent obligations." *Lopez v. Tyson Foods, Inc.*, 2008 U.S. Dist. LEXIS 106132 at *6 (D. Neb. Sept. 8, 2008) ("[A]ny additional discovery or motion practice will create duplicative and potentially inconsistent obligations for the defendant."). Requiring Defendants to litigate the same issues in this Court that will likely be litigated in MDL 2244 clearly creates a burden outweighing the brief delay that Plaintiffs potentially face.

Third, and closely tied to the prejudice faced by Defendants, is the concern to maximize efficiency and save judicial resources. Granting a stay of proceedings pending transfer to MDL 2244 will promote judicial efficiency and consistent adjudication, "particularly when the transferor court believes that a transfer order is likely and when the pending motions raise issues likely to be raised in other cases as well." David F. Herr, Annotated Manual for Complex Litig. § 22.35 (2012); *see Moore*, 236 F. Supp. 2d at 512 (granting a stay because "it furthers the goals of judicial economy and consistency").

Though this Court has deferred ruling on the Motion to Remand (ECF No. 8), that motion raises issues that are common to other actions pending in the MDL transferee court. Granting a stay to permit the MDL court to rule on the remand motion is especially appropriate where the remand motion "raises issues likely to arise in other actions pending in the MDL transferee court." *Freisthler*, 2011 WL 4469532, at *2. More specifically, Judge Kinkeade, in addressing other motions to remand, will need to determine the scope and applicability of the recent opinion of the Supreme Court in *PLIVA, Inc. v. Mensing*, 131 S. Ct. 2567 (2011).

8

In *Mensing*, the Supreme Court ruled that, based on the principle of impossibility preemption, all failure-to-warn claims against generic drug manufacturers are preempted by federal law. *See id.* at 2581. The Defendants argue that all claims against non-manufacturers of an FDA-approved product are preempted by *Mensing*. ECF No. 1, Def. Notice of Removal at 4; ECF No. 17, Def. Opp. to Remand at 2, 8. Defendants also argue that *Mensing* should lead this Court to find that Chesapeake is fraudulently joined.

As the issue of preemption will likely arise in other cases with similar motions to remand involving claims against non-manufacturers, the applicability of *Mensing* may need to be addressed by Judge Kinkeade. In the interest of judicial efficiency and consistent adjudication, a decision by the MDL court will be more desirable than differing decisions coming out of the various Circuits. *See Robinson*, 2012 WL 831650, at *3 (holding that MDL proceedings were created to promote judicial economy and efficiency); *Davis*, 2011 WL 5237563, at * 2 ("[T]he District Court for the Northern District of Texas handling pretrial motions for the other MDL 2244 actions will be better equipped to ensure efficient and consistent adjudication of . . . [the] motion to remand in this action.").

9

## CONCLUSION

For the reasons stated above and the reasons set forth on the record at the hearing of June 20, 2012, the Plaintiffs' Motion to Stop Transfer to MDL Pending Filing and Hearing of Motion to Remand (ECF No. 6) was DENIED as MOOT; Defendants' Motion to Stay Pending Transfer to MDL (ECF No. 7) was GRANTED; and Plaintiffs' Motion to Remand (ECF No. 8) was STAYED. An Order so holding was entered at the conclusion of the June 20, 2012 motions hearing (ECF No. 23).

Dated:      June 26, 2012

/s/ *Richard D. Bennett*
Richard D. Bennett
United States District Judge